**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Arlette Y. HERNANDEZ–BAIDE,**
**Defendant–Appellant.**

**No. 04–3101.**

United States Court of Appeals,
Tenth Circuit.

Dec. 20, 2004.

Rent I. Anderson, Office of the United States Attorney, Wichita, KS, for Plaintiff–Appellee.

Timothy J. Henry, Office of the Federal Public Defender District of Kansas, Wichita, KS, for Defendant–Appellant.

Before TACHA, Chief Circuit Judge, and PORFILIO and BRORBY, Senior Circuit Judges.

BRORBY, Circuit Judge.

Appellant Arlette Hernandez–Baide, a federal prisoner represented by counsel, pled guilty to one count of illegal reentry of a deported alien previously convicted of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). The district

court sentenced Ms. Hernandez–Baide to twenty-four months imprisonment followed by three years supervised release. Ms. Hernandez–Baide challenges her sentence, claiming the district court erred by not applying a downward departure, pursuant to United States Sentencing Guidelines (Sentencing Guidelines) § 5K2.11, for mitigating circumstances concerning a lesser harm, because she risked returning to the United States to settle a parental rights custody battle concerning her eleven-year-old daughter. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Ms. Hernandez–Baide's conviction and sentence.[1]

After Ms. Hernandez–Baide pled guilty, the probation officer prepared a Presentencing Report, noting a downward departure may be warranted, pursuant to Sentencing Guidelines § 5K2.11, under the "lesser harms" provision, because Ms. Hernandez–Baide maintained she returned to the United States to prevent another woman from terminating her parental rights and adopting one of her four children. At the sentencing hearing, Ms. Hernandez–Baide's counsel sought the "lesser harms" downward departure, claiming Ms. Hernandez–Baide only unlawfully reentered the United States to attend a parental rights hearing related to her daughter.

In examining Ms. Hernandez–Baide's request, the district court recognized she sought the downward departure based on her claim she entered the country illegally "to avoid a perceived greater harm" involving termination of her parental rights. However, the judge noted the Tenth Circuit has cautioned courts to infrequently use downward departures under § 5K2.11. The judge then questioned the government's counsel on the Feeney Amendment to the Prosecutorial Remedies and Tools Against the Exploitation of Children Today (PROTECT) Act of 2003,[2] which requires the Attorney General to make reports to Congress on the circumstances surrounding downward departures, together with the name of the judge granting the downward departure. See PROTECT Act, Pub.L. No. 108–21, 117 Stat. at 674–75. In discussing the Amendment, the district court judge explained:

> Well, here's my problem now, despite all of these comments, I still believe that I'm required to follow the guidelines. And I will. Can you find a case which would permit me to do—I would like to do what you want me to do because I think the only reason she came back is to take care of her daughter. She didn't commit any other crimes. But it doesn't serve the interests of justice for me to grant a departure that is not authorized by the guidelines.... [T]here was a time when I felt I was a little bit more free to do that; but now, as I understand it, if I grant a departure like this, it's going to get reported. And I'm not worried about my job, but I think to be consistent with the law, I have to be able to justify it, and I'm not sure I can in this case.[3]

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

2. Pub.L. No. 108–21, 117 Stat. 650, 667 (codified in scattered sections of 18 and 42 U.S.C., with the Feeney Amendment to be set forth in a note to 18 U.S.C. § 3553).

3. We take this opportunity to clarify that the reporting requirements of the Feeney Amendment, as yet, have no effective section, are contingent on certain acts of the Attorney General, and appear to have been indefinitely suspended. See PROTECT Act, P. Law 108–21, 117 Stat. at 674–75; United States v. Van-Leer, 270 F.Supp.2d 1318, 1321–24 (D.Utah 2003) (explaining the legislative history and content of the Amendment, as well as outlining misconceptions it provides for a "black

The district judge further stated, "I want to do it. . . . [B]ut I'm not sure how I can do it and stay within my oath to follow the law." Finally, after further colloquy with both counsel on whether Ms. Hernandez–Baide's circumstance, in returning to resolve the custody battle, warranted a departure, the district court expressly found it lacked discretion and denied the motion. The district court then sentenced Ms. Hernandez–Baide at the low end of the guideline range to twenty-four months imprisonment.

Ms. Hernandez–Baide now appeals the denial of her request for a downward departure under § 5K2.11 on grounds the district court found it did not have discretion to depart. She reasons the district court wanted to depart, but felt it could not "without some guidance from this Court that it would be a proper exercise of its discretion to depart." She further suggests the district court erred as a matter of law in holding it lacked discretion to depart under Sentencing Guidelines § 5K2.11, and in support states, "[t]he lesser harms guideline is not only an encouraged departure factor, but was identified in the presentence report as a viable factor for departure." Finally, Ms. Hernandez–Baide points out the Supreme Court recognizes parental rights as "one of its oldest and most fundamental liberty interests," which supports her argument she illegally entered the country because she perceived that crime to be a lesser harm than termination of her parental rights and adoption of her daughter.

In response, the government suggests Ms. Hernandez–Baide's case better relates to the "family ties and responsibilities" downward departure under Sentencing Guidelines § 5H1.6, which is a discouraged factor she seeks to avoid, knowing her chance of success in getting a "family ties" departure is minimal. It further asserts Ms. Hernandez–Baide is not entitled to a downward departure because the "lesser harms" departure is not applicable to reentry after deportation cases because no connection exists between the crime of illegal reentry and the perceived harm, which in this case involved severance of her parental rights. Alternatively, the government argues 8 U.S.C. § 1326(a), under which Ms. Hernandez–Baide was convicted, is not a specific intent statute and therefore, her intention or reasons for illegally entering the country cannot serve as a basis for departure under § 5K2.11. In support, it relies on the other circuit courts which have addressed this issue and concluded that § 5K2.11 does not apply to illegal reentry cases.[4] *See United States v. Dyck,* 334 F.3d 736, 742 (8th Cir.2003); *United States v. Saucedo–Patino,* 358 F.3d 790, 794–95 (11th Cir.2004); *United States v. Carrasco,* 313 F.3d 750, 755 (2d Cir.2002).

Having examined the parties' arguments, we turn to the applicable law. The "lesser harms" provision allows downward departures in certain circumstances, stating:

> Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate,

list" when court decisions are already of public record).

**4.** The government also contends Ms. Hernandez–Baide presented no testimony or evidence in support of her claim she returned to this country to try to prevent termination of her parental rights over her daughter. However, the record shows a custody proceeding

did occur. A reading of the record shows the district court accepted as true Ms. Hernandez–Baide's contention she returned to this country to resolve the custody dispute of her daughter. As a result, we reject the government's argument, giving due regard to the district court's credibility determinations. *See Koon v. U.S.,* 518 U.S. 81, 97, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

provided that the circumstances significantly diminish society's interest in punishing the conduct, for example, in the case of a mercy killing. Where the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted. For example, providing defense secrets to a hostile power should receive no lesser punishment simply because the defendant believed that the government's policies were misdirected.

In other instances, conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue. For example, where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program, a reduced sentence might be warranted.

U.S.S.G. § 5K2.11.

■ In applying this section, we have said the "lesser harms" rationale for departing from the Sentencing Guidelines should be interpreted narrowly. *See United States v. Warner*, 43 F.3d 1335, 1338 (10th Cir.1994). In addition, this court will generally not review a district court's discretionary decision to deny a request for downward departure, except if it believed it lacked such authority. *See United States v. Fortier*, 180 F.3d 1217, 1231 (10th Cir.1999). "[U]nless the judge's language unambiguously states the judge does not believe he has authority to downward depart, we will not review his decision." *Id.* (quotation marks and citation omitted). Consequently, when a district court unambiguously states it lacks authority to depart downward for an entire class of circumstances, we may take jurisdiction and determine whether the sentence imposed was either "in violation of law" or "an incorrect application of the sentencing guidelines." *See United States v. Castillo*, 140 F.3d 874, 887–88 (10th Cir.1998). In so doing, "we review de novo the district court's interpretation that the Guidelines provide it no power to depart downward from the prescribed sentencing range." *United States v. Sheehan*, 371 F.3d 1213, 1216 (10th Cir.2004) (quotation marks, citation and alteration omitted).

■ In this case, the district court expressly stated it lacked discretion to depart under § 5K2.11. During the discussion of whether risking reentry was a lesser harm, the judge indicated his desire to depart, but noted neither case precedent nor the Sentencing Guidelines indicated any grounds for such a departure. Because the district court expressly and unambiguously stated it lacked discretion to depart under § 5K2.11, we exercise jurisdiction and resolve *de novo* the issue before us as to whether § 5K2.11 downward departures may apply to those convicted under 8 U.S.C. § 1326.

■ Section 1326(a) makes it a crime for any alien to reenter the United States, after being deported, without the express permission of the Attorney General.[5] We

5. Specifically, § 1326(a) provides:
[A]ny alien who—
(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

previously determined § 1326(a) is a regulatory measure with no express *mens rea* element or Congressional intent to include a *mens rea* element to be proven by the government for conviction. *See United States v. Martinez–Morel,* 118 F.3d 710, 715–17 (10th Cir.1997); *see also United States v. Gutierrez–Gonzalez,* 184 F.3d 1160, 1165 (10th Cir.1999). Our determination is consistent with the Supreme Court's conclusion that regulatory statutes, silent with respect to *mens rea,* "impose a form of strict liability," and an inference "Congress did not intend to require proof of *mens rea* to establish an offense." *Id.* at 716 (relying on *Staples v. United States,* 511 U.S. 600, 606, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)). Thus, a deported alien, who makes an unauthorized entry into this country, is arguably *per se,* or "strictly," liable for such criminal conduct, regardless of the underlying motivation for such illegal entry. *See id.* at 715–16. *See also Carrasco,* 313 F.3d at 755 (explaining § 1326 "is designed to deter deported aliens from illegally reentering for any reason," thereby making "a deported alien's unauthorized presence in the United States a crime in itself"); *United States v. Gonzalez–Chavez,* 122 F.3d 15, 17 (8th Cir.1997) (pointing out this and seven other circuit courts have held § 1326 is not a specific intent statute, and that Congress intended to establish a *mala prohibita* offense to assist in the control of unlawful immigration).

■ Given our determination § 1326 requires no specific motive or intent, we join those circuits which have considered § 5K2.11 in application to § 1326 and held that because § 1326(a) is not a specific intent crime, an alien's intent, motivation or reason for illegal entry into the country cannot serve as a basis for departure under § 5K2.11. *See Dyck,* 334 F.3d at 742; *Saucedo–Patino,* 358 F.3d at 794–95; *Carrasco,* 313 F.3d at 755. It follows that because Congress excluded specific intent in imposing strict criminal liability under § 1326 for illegal reentry, specific intent should not serve to minimize the resulting sentence. To hold otherwise would not only contravene Congress's exclusion of specific intent in 8 U.S.C. § 1326, but its deterrence efforts towards those repeatedly crossing our borders in violation of this country's immigration laws. *See Gutierrez–Gonzalez,* 184 F.3d at 1165 (noting Congress enacted § 1326 as a deterrent in an attempt to break the tedious cycle of illegal reentry by the same aliens); *United States v. Hernandez–Guerrero,* 147 F.3d 1075, 1078 (9th Cir.1998) (explaining Congress intended § 1326 to give "teeth" to civil immigration statutes and ensure compliance with deportation orders); *Martinez–Morel,* 118 F.3d at 716 (stating "crossing international borders is a type of conduct generally subject to stringent public regulation" (quotation marks and citation omitted)). Thus, while Ms. Hernandez–Baide's maternal motivation for illegally reentering the country is extremely compelling, we nevertheless hold, as a matter of law, that downward departures under § 5K2.11 cannot apply to those convicted under 8 U.S.C. § 1326. Thus, the district court correctly determined it lacked authority to make the requested downward departure.

Accordingly, based on our holding downward departures under Sentencing Guidelines § 5K2.11 do not apply to aliens convicted under 8 U.S.C. § 1326, we AF-

Section 1326(b)(2) further provides for imprisonment of not more than twenty years for illegal reentry of aliens, like Ms. Hernandez–Baide, whose removal was subsequent to a conviction for commission of an aggravated felony. *See* 8 U.S.C. § 1326(a) and (b)(2).